Hi. Our first case of the morning is case number 118432, Kerry L. Seymour v. Bradley A. Collins. Are you ready to proceed? Appellee, ready? Mr. Cacciatore? May it please the Court. Counsel. Counsel. My name is Bill Cacciatore and I represent the plaintiffs' appellants in this case. I'm going to try to confine my remarks here this morning to the dissent of Justice Shostak because I certainly agree that the result in this case is a grave injustice to Terry Seymour and his wife Monica Seymour. You should keep in mind in that regard the fact that this case, Monica Seymour, was filed on April 24, 2008. That pended and continued to pen to the automobile accident that Terry Seymour sustained on June 3, 2010, more than two years. Looking at the chronology of the bankruptcy, Chapter 13, the last that I see in the Chapter 13 was a 9-20-10, which was after the accident of June 3, 2010. It was a change of address and then also in June of that year also there was another change of address. That was the total. The completion of the plan was done on June 29, 2012. And on 7-17-12, Terry and Monica Seymour were discharged. Now, the personal injury case that I filed on their behalf was, I believe here, the second amended complaint was filed on October 27, 2011. It was a long time. Terry Seymour and Monica Seymour are typical American workers. They obviously could have filed this if they had known. But specifically in this case, different than any other case I have read, not only in the state of Illinois but the entire United States, was there ever an affidavit by the United States trustee in bankruptcy stating that attached as proof and evidence in the case that he did not need to do anything more than what he did do in this case. That's a distinction between all other cases, Chapter 13, those who were never converted to a Chapter 13, to a 7, and those who just remained as a Chapter 13 as this case was. A great distinction. In addition to the affidavit of Lydia Meyer, who was the trustee in bankruptcy for approximately 20 years, when she signed this affidavit that it was not necessary for him or his wife to do so, his own lawyer, Jeff Dahlberg, signed another affidavit that was attached to the motion for summary judgment. I don't think that that indicates in any way, shape, or form that he received some kind of a benefit of any kind in this case. And this court has in other cases pronounced that sometimes in cases, for instance, of a spoliation, that it doesn't necessarily need to be a dismissal of the lawsuit, but there can be other sanctions. And I'm urging this court today to please consider those facts because those facts, I think, are the most important facts in this entire litigation. As we consider... Mr. Cacciatore, what about the defendant's waiver argument? Waiver argument? That we waived what? I don't know what the defendant's waiving. I guess I don't understand the question. Well, that's all right if you don't. Okay. Then I have a question. I think you're urging de novo review as opposed to... Yes. ...abuse of discretion. Yes, Your Honor. What about the statement in Runge where we said, judicial estoppel is an equitable doctrine invoked by the court at its discretion? So why should we apply de novo review here? Well, I think it could be either, frankly. I'm not saying that judicial discretion may not obtain it. We know that the court did here, the Second District Appellate Court did, found abuse of discretion. But I think in de novo here, I don't think there's been enough evidence here to have just abuse of discretion standard, in this case, as it should be abuse of discretion as opposed to a de novo. I think, I don't think that the trial court nor the Second District Court really gave much consideration to what I am urging this court to do and take into consideration that the United States Trustee for the Bankruptcy Court of Illinois attached an affidavit that this couple, Terry Seymour and Monica Seymour, didn't have to do anything unless they got more than $2,000 in cash during this plan. Then they would have to report it to the trustee. Now, these two people, Terry Seymour and Monica Seymour, are regular people. They don't know more than what they're told. And when the United States trustee in bankruptcy tells them, you don't have to do anything. And you have attached to this case the affidavits of both the U.S. trustee and their lawyer, Jeff Dahlberg, as well as their own affidavits. I think that we should give that a lot more consideration. I think that gives rise more to a de novo standard than it does an abuse of discretion. Now, we know that the cases talk about both standards, both the abuse of discretion, and also the de novo review. Are you saying that the U.S. trustee told them they didn't have to report this personal injury accident? I'm saying the affidavit of the United States trustee, Lydia Meyer, stated, as she does in all meetings with all the Chapter 13, according to Jeff Dahlberg, who was the attorney for the Myers in this case, said and instructs them that they do not have to turn in any money or do anything more than disclose that if they get $2,000 or more from any source, they are to immediately let the trustee know, their lawyer and the trustee know about that. And that's what they did here. And I think it's very important, whether we really should have done it or didn't do it, they were indeed instructed by the trustee to do that. And that was confirmed in the affidavit of Jeff Dahlberg, who specializes and concentrates in bankruptcy law, in his affidavit, that that's exactly what she said. She tells all the debtors that appear before her to do that. And I think that is a distinction that no other case reported that I know of, at least in Illinois or any other state, has an affidavit of the trustee. With regard to that, I have two questions. One, did the affidavit say you don't have to do anything else, or did it just say positively if you get $2,000 or more, you have to report it? And secondly, is it your position that what the trustee said to them prompts the provisions of the bankruptcy code, which requires reporting, or is that an equitable argument you're making? Well, it can be both, I think. Number one, to answer your first question, I think that it said a little more than the $2,000 in cash. If you get any other monies, more devices or divorce settlements or any other type of source that constitute $2,000 or more, they must report that. So it's just not the cash. So there's other sources involved in what they might have to report, which would include the code. Your second question was? Was this an equitable argument that you're making, or can the statement of the trustee trump the requirements of the bankruptcy code? Well, I guess it's an equitable argument because we know what the code says. It's in black and white, and I think we can't dispute what the code says. So it's a requirement, but can the bankruptcy trustee waive that requirement, or are you just saying they can rely on it? That I will leave to you, but I say in this case, it does not constitute grounds for a dismissal of the personal injury lawsuit of June 3, 2010, for numerous reasons. It's an unjust result. This man is an innocent person. He was a passenger in an ambulance. Two vehicles collided. He is primly and totally disabled, will never work again. He has medical bills I'm sure that exceed over a million dollars, and he will continue to have treatment the rest of his life. And to have this kind of a result for what is contained in the record here I think is wrong, and that's why I'm here urging this court to please reverse the motion for summary judgment order in the Circuit Court of Winnebago County and also reverse the second district formal affirmation of that order of the Circuit Court of Winnebago County. I think some of your argument dealt with in your briefs that the trustee would not be able to alter the payments under the plan that was in effect, even if she had been aware of this lawsuit. Do you have any authority that says that? I do not. It was not cited, I don't believe. I do not, I'm sorry. Mr. Cacciatore, this is a Chapter 13 bankruptcy where the debts are consolidated. That's correct. Payment plan. That's correct, Your Honor. This creditor was not discharged? This creditor was discharged, in fact, and paid. No, I mean the debt that was owed to the creditor. Was that discharged? According to the plan. That's what happens in a Chapter 7. Well, it was discharged, okay, in accordance with the plan, the Chapter 13 plan, and I think that was on June 29, 2012. Then subsequently the case was closed and dismissed. But it is different from a Chapter 7 where you're not making payments, but you've got a complete discharge of assets. This was not really a discharge of the assets in that sense of a Chapter 17. Many of these cases, as you know, are Chapter 13s converted to a Chapter 7. Well, in terms of the specific disclosure or nondisclosure, who actually filed that paperwork? The law firm of Balsley and Dauberg in Rockford, Illinois. And the affidavit, is it pronounced Dauberg? Pardon me? And Mr. Dauberg's the attorney? Yes, Mr. Balsley died after it was filed, and so he handled the case from that point on. But the affidavit that was put forth by the bankruptcy attorney indicated that the Bankruptcy Council did not advise these clients to disclose this information. Is that right? Of course, that was, I mean, I don't think anybody ever advised, if that's what you're asking me, the creditors, that he had a cause of action arising out of the automobile accident of June 3, 2010. I don't know that anybody ever told him that. I don't think so. Thank you. And, of course, in this case, I mean, I think the whole filing for all the debt incurred was like $69,000 approximately, according to schedules that I've seen. And I may be wrong on that, but that's what I believe they were. So he paid in accordance with the plan, and he was discharged and did everything he thought he should do. And this accident happened, you know, more than two years after they filed this Chapter 13, too, and I think that's important to note, too. And that's why I gave you those dates, because it was filed in 4-2408. The accident happened again in June of 2010. It was a long time. And this plan was winding up. That's a fact. And, unfortunately, it was not known. It would have been very simple if, obviously, if the trustee hadn't said anything about it to the Chapter 13 debtors. That would have been nice. Maybe the lawyer could have been able to take care of that. But for some reason in some of these cases, they don't realize the simple fact that the code does require you to file, of course, and advise the bankruptcy estate and creditors that you have a cause of action for personal injury so they can decide better. There's no question about that. All that I'm saying in this case is this is a very harsh and unjust result to have this case taken from these two people on the basis of not being able to proceed to try to attempt to recover their economic losses as well as his personal losses in the case. Any other questions? There doesn't appear to be any other questions, Counsel. Pardon me? I said there don't appear to be any other questions. Okay. Thank you very much. Thank you. Good morning. May it please the Court, my name is Lori McGurk, and I represent the defendant at L.E. Rockford Country Club. This morning I'm splitting my time evenly with my esteemed colleague, Ms. Jennifer Moriarty. We're both presenting the joint arguments of both defendants. Specifically, I'll be addressing the issues of waiver, the standard of review, and the affidavits. Ms. Moriarty will be discussing the duty to disclose, the oath, and the sympathy red herring. Judicial estoppel is an equitable doctrine invoked by the Court at its discretion. It doesn't focus on the relationship between the litigants. Instead, as the First District has so aptly noted in Fidani v. Lewis, judicial estoppel focuses on the relationship between the litigant and the judicial system. Let's talk about that for a minute. Certainly. It seems like the evidence is uncontradicted that plaintiffs received no benefit for the nondisclosure because the existence of the suit would have made no difference to the outcome in the bankruptcy court. And whether a benefit was received is one of the elements of estoppel, isn't it? The benefit that the plaintiffs received is a discharge in bankruptcy because the presumption is that it wouldn't have made a change in the bankruptcy plan payment, but we don't know that because the creditors and the bankruptcy trustee and the bankruptcy court never got to hear what those assets entailed and what they involved and to make their own decision about whether those assets would be exempt. Judicial estoppel is an affirmative defense. I didn't hear the question. Judicial estoppel is an affirmative defense, right? I think judicial estoppel is an affirmative defense. That the party in asserting has the burden approved, right? By clear and convincing evidence. So now you're saying that who had the burden to show that there was a benefit to the plaintiff with respect to the discharge in bankruptcy? As far as we know, there's an equal presumption that it would have made no difference. But again, this is the problem. The relationship between the litigants is not at issue here. So it doesn't matter if there was a benefit to the plaintiffs. I'm only focusing on whether a benefit was received. The benefit was received. There was nondisclosure, so they were able to conceal assets even though there's a continuing duty to disclose. They concealed the assets. They had a first worker's comp injury. They made a claim based on that injury. What's the benefit? What is the benefit? The benefit is they received a full discharge in bankruptcy without fully disclosing all assets available to the bankruptcy estate. And you're saying the fact when we talk about whether it would or would not have made a difference to the outcome in the bankruptcy court, you said we can't know that. We don't know that because we don't know what the entire assets would be. For example, Your Honor, what happened is the debtors told the bankruptcy court, gosh, we're not working. We don't have any income. We need our planned payments reduced. And these planned payments had been based on all of the schedules that were originally filed by the plaintiff debtors. And they had an income level, and they said the income level has changed. We no longer have that income level because I'm not working. I've been hurt. So the creditors were able to review that information. They were able to determine whether the income was as discussed and whether, indeed, the debtors were solely relying on worker's comp benefits and if those benefits were unavailable to the bankruptcy estate. Some time passes. Evidently, the plaintiff who has sworn before the bankruptcy court that he's not working has returned to work, but he's never advised the bankruptcy court creditors, you should know I'm back to work. I'm getting a salary. I'm now employed. And maybe instead of reducing those planned payments downward like you did for me before, maybe they should be adjusted upward, and you should be getting more money than you were originally because I'm now working. So that's the windfall. That's the advantage. That's the benefit to the plaintiff. His nondisclosure never resulted in a readjustment of the planned payments that he was making. Do we have the plan or the discharge order in the record? Your Honor, I believe that the discharge order is in the record that was submitted or at least the outline stating what the discharge order was. We know that there was one amendment. I believe this court could take judicial notice of that filing. I don't know if it's included in the record or not specifically or just the notice that one was filed. So obviously my question is we're talking about what could have happened, what did happen, would there have been a change. Shouldn't we know something more about what was going on in bankruptcy? Shouldn't we know more about what was before the bankruptcy court? I think that the plaintiff's affidavits have described what was happening before the bankruptcy court. The trustee and the bankruptcy attorney both stated there were some modifications to the plan. The affidavits state directly that they applied for a reduction in the planned payments because the plaintiff was no longer working. And they also state that there were only other filings or address changes in the bankruptcy court and that the bankruptcy was ultimately discharged. And those are the relevant facts in this matter. What is the – are you basing your argument for judicial estoppel on the failure to report a change in work or the failure to report a possible asset in this personal injury action? It's all of those things. How would – how does that – I'm not sure how judicial estoppel would work if it was only failure to report a change in work. How would that have stopped him from pursuing a personal injury action? Because, again, the way the bankruptcy court is able to function is by allowing creditors to try to get some money back, but telling creditors you may not receive everything, you may only get pennies on the dollar. But the price that debtors pay in order to get that discharge and not to pay everything that they owe is to lay bare their financial corpus and say, this is what we have. These are the assets we have. You get to look through them and you get to make the determination, ask for these things to be available to the bankruptcy estate so that we can get more of our debt returned to us. So the elements are met here because the party to be estopped has taken two different positions. The plaintiff said, I was working, now I'm not working, never said, oh, I'm working again, but still applied for workers' comp benefits based on the second accident and filed a state court action based on injuries that were received on the same date as a result of the workers' comp injury. The positions are factually inconsistent. They were taken in separate proceedings. In fact, not just one proceeding, not just two proceedings, but three, because it's the bankruptcy, it's the workers' comp forum, and it's the state court action. And they intended the trier effect to believe everything that they said, whether they were working or not working, and they succeeded by receiving a benefit, meaning the total discharge, meaning the creditors did not receive as much money as they had hoped they would receive. It seems like the missing piece following up on that question is, would you agree that if the plaintiff, if we knew for certain that the plaintiff received no benefit from the nondisclosure because of the existence of the suit, would it have made no difference to the outcome in the bankruptcy court? Would you agree that there would not be a stop if we knew that for certain? I don't believe that, because I believe even the cases of, I think it's, I'm going to look here, Holland, for example, Holland v. Schmanz, they were able to infer the benefit to the plaintiffs based on the fact that in that one there was no judicial estoppel found specifically because in Holland the plaintiff never got a discharge. That's entirely the opposite here. In this matter, the plaintiff did get the discharge. So even based, I mean, it may not be. But do we know whether that would have happened with or without the fact that there was nondisclosure of the suit? Which part? What do you mean? Well, my question remains, who had, let me put it this way. Did you have a burden with respect to your motion to show that there was a benefit that was conferred? Yes. The burden is on the defendant to show by clearing convincing evidence. All right. What is the clearing convincing evidence that you produced to show that there was a benefit? That the plaintiffs received a discharge. And remember, Your Honor, this is one of those situations where the trial court is the gatekeeper, and they get to decide at their discretion whether the gate should be closed to the courthouse based on judicial estoppel. Would the plaintiff have received a discharge if he had turned over the information? That's speculative. We don't know. And that's, I know this is circuitous, but we don't know. Right? I mean, we don't know. And was there a benefit if we did know that regardless of him turning over the information that he would have achieved a discharge, would there have been any benefit? Then judicial estoppel, we probably would not be seeking this. If he had turned over the information, then we wouldn't have been able to say that he took inconsistent positions contending the prior effect to believe them. So we would have been stopped at the first few elements, not at the benefit element. And, again, I refer back to Holland, in which the court specifically found that because, specifically because the plaintiff is not discharged, he didn't receive the benefit. The inverse, then, is true, that if he had been discharged, he would have received the benefit. I'd like to change. And I see my time is up, Your Honors. But I know Ms. Moriarty was going to address the duty to disclose in the oath. And if there are no more questions, I'll proceed. I think there are. I have one question. You were going to address standard review because it may make a difference here. You're arguing for abuse of discretion. But this came to the court on a motion for summary judgment, which says there's no dispute as to the facts. So why wouldn't we review de novo? The better reason to point is the one that was raised by the court in Berger v. Motter. And in that one, they said that an abuse of discretion standard is appropriate in applying judicial estoppel, regardless of the procedural vehicle in which the motion is raised. Because once you have a case where the court has determined that a party is judicially estopped from pursuing it, the court has to do something with that case. It can't leave them sitting there. There has to be some summary procedure to dispose of a case that the plaintiff cannot continue. And in this case, it could be a summary judgment or it could be a 2-619 motion to dismiss. Either way, it's just a way of clearing the court's docket and removing it because the plaintiff can no longer continue. So there really is no need for a de novo review. That's more administrative. The court has decided within its discretion we're not going to allow this case to move forward. Now what do we do with this case? We have to get rid of it. And quickly, addressing waiver, we believe that the plaintiffs have waived the issue of the oath requirement, which counsel is going to talk about, because the plaintiffs never brought it up in front of the trial court. In fact, they cited people v. Runge, which is the very case that states there's not an oath requirement, but there's the requirement that the plaintiff had intended the trier of fact to accept the truth of the matter asserted. The plaintiff relied on that case. The plaintiff argued that case before the trial court and now, upon appeal, is trying to ask this court to make sure that there's an oath requirement. For that reason, we're asking this court to. Hold on just a moment. Justice Freeman has a question. I don't understand how the payment plan works. The payment plan initially was set up based upon the income that he reported, and that changed. Then he should report it so that he would either pay more or pay less. Did that affect the balance? What happens is, with the Chapter 13, they're still saying this is the balance you have owing, but we're going to reduce your payments. So only the payments are reduced. Only the payments are reduced. The balance is not reduced. And you only pay for a period of five years. And once the five years is over. So where's the benefit? That is the benefit. The benefit is that he has paid less, according to the plan, than he had agreed to initially. Because you can't pay for longer than a period of five years. Thank you. Thank you. Good morning. May it please the Court. Jennifer Moriarty, argument on behalf of ATS Medical Services, Sean Brainy, and Leo Bersani, and jointly on behalf of all defendants. I'm going to apologize if I do cover a couple things that Ms. McGurk has already covered. It just seems like the questions brought her around. Judicial estoppel was properly applied in this case by the 17th Judicial Circuit and the 2nd District after consideration of all the circumstances contained within the record, the argument, and the briefs. And this Court should affirm that ruling. Both courts found that plaintiff's failure to disclose an after-acquired cause of action in an ongoing Chapter 13 proceeding and their actions satisfy those elements of judicial estoppel by clear and convincing evidence. Plaintiffs are now trying to argue in their briefs that the general elements of judicial estoppel that this Court set forth in Cavallaro should be reduced to a rigid formula to include a requirement that inconsistent statements be made under oath. When this Court has espoused those elements, it looks to the intent,  This Court again reiterated those elements in Jones and in Runge. And in none of those cases did they set forth an oath requirement. The appellate courts have substituted the oath requirement as a general element when deciding cases under judicial estoppel. An under-oath requirement is not required for the application of judicial estoppel in the context of cases involving a bankruptcy petition and an undisclosed claim for money damages in another proceeding. Upon filing for bankruptcy, a debtor takes an oath. They take an oath to provide truthful, honest, and complete disclosures to the bankruptcy court. In addition, they take another oath in which they affirm that they will abide by the ongoing duty to disclose any change in their financial status throughout the life of their bankruptcy. In this case, the evidence was clear. When the financial circumstances changed to their detriment, the plaintiffs went into the bankruptcy court, sought a modification to reduce the amount that they were paying. When their circumstances changed again, they didn't bother to tell anybody. They didn't tell their bankruptcy attorney. They didn't tell the trustee. They just let it go. The ongoing duty imposed upon debtors is a very small price to pay when they seek protection under the bankruptcy rule. The duty is at the very core of the bankruptcy process. If creditors cannot rely on the debtors to fully disclose, then the creditors are not giving ample opportunity to seek any modification or change to get their money back. Ms. Moriarty, the defendants are not creditors. No, they are not. I understand your argument, and I don't disagree with it. I handled bankruptcy cases, so I know how this works. But at least at the time it was initially filed, there was no nondisclosure breach. And we fully admit that. But your argument is focused on down the road. Down the road. And back to Justice Thomas and Justice Carmeier's questions, I'm having trouble understanding how the nondisclosure about the wages going up or down makes a hill of beans of difference in terms of any benefit that they would have received that causes harm to you. Well, the creditors and the trustee were not given an opportunity to go back and seek a modification after he returned to work and got off the TTD benefits to increase the payments either back to where they were before or even more than what they were before based on what he was making at the time. In addition, the cause of action approved two years before the discharge. It was never disclosed. The creditors and the trustee could have sought a dismissal of his action to seek those funds. The chance was not given. And when you file for bankruptcy, you have to play by the rules. In any court, you have to play by the rules. And in this particular case, the plaintiffs chose to ignore the duty to disclose when it worked to their detriment, when perhaps their bankruptcy could have been modified again to increase their payments. Well, in terms of the relief that you and the defendants are seeking, it's to bar the personal injury action, right? Unfortunately, that is the end result in judicial estoppel. And that is something known to the bankruptcy trustee after the fact. Now, did the bankruptcy trustee have the authority to reopen the estate based on fraud or because of nondisclosure? Well, when the bankruptcy attorney and the trustee found out about this cause of action, the bankruptcy had already been discharged for a year. And my understanding is after a year, they cannot now go back in and see it. There is a potential for some criminal action, but that's not within the realm of this case. What facts were asserted in the motion that indicated a benefit? The benefit is they got a discharge at a reduced amount of payment. They did not disclose the cause of action, which is an asset. The plaintiffs, once they file for bankruptcy, they don't get to pick and choose what is an asset. They must disclose it. Were there facts presented in the motion that indicated it was a reduced amount of payment? It's in the bankruptcy record that when he sought his modification in March of 2010, it was for a reduction in payments from what the original plan had confirmed. So he did receive a benefit. The plaintiffs both received a benefit by reducing the amount of payments. Your time has expired, counsel. Thank you, Judge. Thank you. I'm not so sure that the benefit that counsel was talking about was after the personal injury accident of June 3, 2010. That is probably just a matter of record, but I don't know that she's correct that it was after that time. And as far as the waiver, I apologize to you, Your Honor, but I don't believe that there was any intentional waiver by these plaintiffs, appellants here in this case at all. I do apologize to you for that. But I do want to say that it's important to know that these plaintiffs here, and appellants, Terry and Monica, they disclosed in discovery in the case that is presently pending, still in the Circuit Court of Winnebago County, that they did have this accident in interrogatories and depositions. I think that's important to know, that there was never any attempt to try to evade what duties they had in questions such as the boilerplate question about bankruptcy and so on. That was disclosed by Monica and disclosed by Terry in discovery in this case. In this case, in this personal injury case. In this case, it's still pending, one that they have obtained judicial stop-a-long. It's still pending, but they did disclose that, and that's where it took it. So thank you. Thank you. Case number 118432, Terry Seymour v. Bradley Collins, will be taken under advisement as agenda number 22. Mr. Cacciatore and Ms. McGurk and Ms. Moriarty, thank you for your arguments this morning. You're excused at this time.